| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

Arthur C. Hypolite, *et al.*, §
§
　　　　Plaintiffs, §
§
*versus* § Civil Action H-04-1468
§
City of Houston, §
§
　　　　Defendant. §

## Opinion on Summary Judgment

1.　*Introduction.*

Three employees of the city of Houston sued it, saying that they were mistreated because of their race and that the city retaliated for their filing complaints about race discrimination. The city moved for summary judgment. It will prevail.

2.　*Background.*

When Arthur C. Hypolite, Bernard Garrett, and Willie Pratt filed this lawsuit in April 2004, they were employed as "community service inspectors" in the City of Houston's Department of Public Works and Engineering, Neighborhood Protection Division. They are black.

In November 2000, each of them applied to be a senior inspector. They were rejected in late February of 2001, when the city selected two blacks and a white for the three positions. Two months later on April 30, they complained to the Equal Employment Opportunity Commission saying that the city discriminated against them. They and other plaintiffs also sued the city for awarding a position to a white man. *See Crawford v. City of Houston.* The district court ruled in favor of the city and was affirmed on appeal.

Since October 2001, Hypolite had called a coworker, Dan Petrash, a Klansman, attempted to intimidate him, and repeatedly commented on Petrash's Confederate-flag tattoo in the workplace. On April 23, 2002, Hypolite commented to the entire division by an e-mail

on Petrash's retirement and the Confederate flag. Because of Hypolite's badgering Petrash, Hypolite was suspended on April 24 for seven days.

On September 24, 2002, the city reprimanded Hypolite for being out of uniform. The next month, the city suspended Garrett without pay for fifteen days for not wearing his uniform.

On February 22, 2003, the city's Aviation Department hosted a job fair. Garrett and Pratt attended and applied to be project manager, senior inspector, and inspector. They say they were not interviewed after a representative ascertained that they had made complaints in the past.

On May 1, 2003, Garrett and Pratt were denied promotions to division manager and chief inspector. They were also denied promotions to assistant chief inspector on March 1, 2004.

Hypolite, Garrett, and Pratt filed this lawsuit on April 13, 2004. It was stayed for five years while they pursued their case in *Crawford v. City of Houston*.

3.  Preclusion.

Hypolite, Garrett, and Pratt's claims arising out of the city's decision not to promote them to senior inspector in February 2001 are issue precluded. These facts have already been litigated in *Crawford v. City of Houston*, and it was their responsibility to raise all legal theories in that suit.[1]

4.  Retaliation.
    A.  Hypolite.

Hypolite lists two acts of retaliation by the city: that he was suspended for violating the city's e-mail policy and reprimanded for being out of uniform. Those are not adverse employment actions significant enough to frustrate his economic opportunity. Assuming that they are, Hypolite does not identify what behavior provoked the retaliation. His protected activity appears to be testifying against the city in a discrimination trial and filing Commission complaints and lawsuits against it.

---

[1] *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 48–49 (1897); *United Mine Workers v. Gibbs*, 383 U.S. 715, 723 (1966).

Hypolite cannot establish retaliation because he has no facts of causation, only a chronology. This is a necessary condition but not a sufficient one. He has not shown that his protected activities resulted in his suspension and reprimand. He testified in January 2000 – 27 months before the suspension and 32 months before the reprimand. He lodged a Commission complaint on April 30, 2001 – one year before the suspension and 17 months before the reprimand. The temporal link has no plausibility whatsoever.

B. *Garrett and Pratt.*

Both men have a history of lodging complaints against the city. From 1998 to 2002, Garrett filed eight charges and suits of discrimination and retaliation for not being promoted. From 1997 to 2002, Pratt complained at least ten times on racial grounds for not being promoted. Despite that many of these events happened outside the statute of limitations, Garrett and Pratt would have the court believe that they, in conjunction with more recent promotion denials and Commission determinations, show that the city's decision not to promote was retaliation for their vociferous, litigious history.

(1) *Job Fair*

Garrett and Pratt say the city retaliated by not interviewing them for three jobs at the Aviation Department's job fair in February 2003. Their protected activities appear to be lawsuits in 1998, 2001, and 2002, and Commission complaints in 2001. They, too, rely only on a time-line but offer no facts to support their assertion. They sued the city on February 19, 2002, more than a year before the job fair. The other protected activities took place 16 months or more before the job fair. The temporal links are too tenuous.

If Garrett and Pratt could show a causal link between their protected activities and the job fair, the city says they were not interviewed at the job fair because they had no construction experience. Garrett and Pratt have no construction experience. This is a legitimate, nondiscriminatory purpose for not interviewing them.[2] They have no information that the city's reason for not hiring them was a pretext for a real, discriminatory purpose.

---

[2] *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

        (2)    *2003 and 2004 Non-Promotions*

They also complain of retaliation when the Public Works Department did not promote them to division manager or chief inspector in May of 2003 and assistant chief inspector in March of 2004.

Adding Garrett's lawsuit of April, 21, 2003, and Garrett and Pratt's Commission complaint of May 12, 2003, to the list of protected activities does not change the result. For the jobs of assistant chief inspector, chief inspector, and division manager, the city had a legitimate reason to reject them: the panels did not choose them as finalists. Garrett and Pratt have offered no evidence to suggest that the panels knew of their earlier complaints or that there was an illegal basis for the hiring decisions. They have not shown that the city's decisions were racially motivated or that they were better than those hired.

5.    *Constructive Discharge.*

Hypolite says he was constructively discharged because the discriminatory conditions at work were intolerable. Hypolite began work for the city in October of 1993. He resigned eleven years later in May of 2004. If the working conditions were intolerable, a reasonable person in his position would have felt compelled to resign much earlier.

He says that after filing this suit the city treated him adversely on a daily basis. He has not shown that the city ever acted negatively in response to his complaints.[3] His resignation letter of May 19, 2004, alleges unfair treatment, physical and emotional harm and distress, and declares that "the circumstances are such that my continuing employment has been rendered intolerable to me, as it would to any reasonable person." Declaring the legal standard for constructive discharge is not a fact, and he offers no examples of increased unfair treatment.

6.    *Title VII.*

Garrett and Pratt complain that the city discriminated against them in violation of Title VII of the Civil Rights Act by denying them promotional opportunities at the 2003 job fair, the interview on May 1, 2003, and the interview on March 1, 2004.

---

[3] *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

A.  *Job Fair.*

At the job fair the city asked for candidates with construction or construction inspection experience. Because Garrett and Pratt have not shown that they had the experience to qualify for the positions, they do not have a race discrimination case.[4] They also have offered no evidence that race was a determinative factor in their non-selection.

B.  *2003 and 2004 Non-Promotions.*

Garrett and Pratt have not shown that race or discrimination was a factor in not receiving promotions to the open positions. The city has offered the panels' decisions to not choose Garrett and Pratt as finalists and they have shown no evidence that race was a motivating factor in the panels' decisions.

7.  *First Amendment Retaliation.*

Garrett and Pratt complain that their non-promotions were retaliation in violation of their First Amendment rights to free speech. They have not shown that their speech motivated the promotion denials.[5] The city has given legitimate, nondiscriminatory reasons for the lack of promotions and Garrett and Pratt have not shown facts otherwise.

8.  *Section 1981.*

Garrett and Pratt complain that their non-promotions violated Section 1981. To sue the city, they must show that there was a policymaker, an official policy of discrimination, and discrimination whose "moving force" is the policy.

As a "policy" they point to a 1999 Affirmative Action Program Report for the Department of Public Works that implies the department will seek to increase the number of white employees. Garrett and Pratt do not show that the Public Works Department report played a role in the 2003 Aviation Department decision to not interview them. They present no evidence that the interview panels in May 2003 and March 2004 knew of the report and its goals, or that the report was a factor in the panels' decisions.

---

[4] LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996).

[5] Alexander v. Eeds, 392 F.3d 138, 142 (5th Cir. 2004).

9. *Section 1985.*

Hypolite, Garrett, and Pratt complain that the city and its agents have conspired to deprive them of their civil rights. A violation of Section 1985 requires an underlying constitutional violation and a conspiracy. Hypolite, Garrett, and Pratt have not shown a substantive constitutional violation. Also, they have no evidence of conspiracy. They offer the 1999 Affirmative Action Program Report, but they have no evidence that the city, its agents, or its employees knew of the report at the times they were denied promotions. They offer no evidence that anyone in the municipal government conspired to deprive them of their constitutional rights.

10. *Conclusion.*

They have only their repetitive assertions – no fact, no corroboration – that the city discriminated or retaliated against Hypolite, Garrett, and Pratt. Hypolite, Garrett, and Pratt will take nothing from the city of Houston.

Signed on November 25, 2011, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge