IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| ARTHUR C. HYPOLITE, <br> BERNARD GARRETT, and <br> WILLIE PRATT, <br>     Plaintiffs, <br><br> v. <br><br> THE CITY OF HOUSTON, TEXAS, <br> A Municipality, <br><br>     Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> §    CIVIL ACTION NO. H-04-1468 <br> § <br> §           **A Jury Is Requested** <br> § <br> § <br> § |

**PLAINTIFFS' MOTION FOR RECONSIDERATION**

Arthur C. Hypolite, Bernard Garrett and Willie Pratt, plaintiffs, move for reconsideration of the Court's granting of summary judgment and entry of final judgment thereon. This motion is filed within 28 days of the date of final judgment and is to be considered under Rule 59. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167 (5th Cir. 1990), *overruled on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*).

**Standard for Consideration**

Generally, a movant for reconsideration under Rule 59 must establish an intervening change in the controlling law, the availability of new evidence not previously available, or the need to correct a clear error of law or prevent manifest injustice, *In Re Benjamin Moore &Co.*, 318 F.3d 626, 629 (5th Cir. 2002).

The Court must strike a proper balance between the competing alternatives for finality and for the need to render a just decision on the basis of all the facts, *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993); *Lavespere, supra*, 910 F.2d at 174.

### The Court's Bases for Summary Judgment

The court granted summary judgment on separate claims made by the plaintiffs, discussed in the court's Opinion on Summary Judgment, Docket No. 49, in sections number 3 through 9. This motion addresses the court's opinion with reference separately to these sections.

### Summary of the Argument

Mindful of the extended pendency of this case, the need to present strongly convincing facts and law, and the impropriety of merely rehashing previously made arguments, the plaintiffs focus this motion on what they contend are clear errors of applicable law.

Generally, in its opinion the court based its decision on a perceived insufficiency of evidence to support the plaintiffs' claims. To demonstrate error, accordingly, the plaintiffs must make reference to the factual evidence presented and, at least to some extent, their arguments on how the evidence necessarily must be viewed as raising material issues of fact for trial. Plaintiffs particularly argue that the court erred in failing to give due deference to the determinations of the United States Equal Employment Opportunity Commission, finding sufficient evidence to conclude that the provisions of Title VII of the 1964 Civil Rights Act, as amended, likely were violated on the bases alleged in the plaintiffs' claims.

### Argument

**1. Preclusion** - Plaintiffs did not contest preclusion of the claim found by the court to be precluded. See Pl. Brief on Preclusion, Docket No. 46, at p. 3.

**2. Retaliation**

    **A. Hypolite**

The court delimits the claims of Plaintiff Arthur Hypolite to two particular incidents and erroneously adopts long abrogated precedent advanced by the City to find that the two acts involved were not adverse actions because they were not "significant enough to frustrate his economic opportunity." Such analysis was rejected by the United States Supreme Court in *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) (Employer acts are adverse actions if they would dissuade a reasonable employee from making or supporting claims of discrimination.)

Notably, the court found that a week's suspension without pay, and a subsequent 15-day suspension without pay, had no economic impact upon Hypolite. Such suspensions would have been regarded as an "ultimate employment decision" even under the prior law, *Mattern v. Eastman Kodak Co.*, 704 F.3d 702 (5th Cir. 1977).

Hypolite's evidence included findings in his favor by the United States Equal Employment Opportunity Commission, Pl. Opp. to M.S.J., Docket No. 43, Exh. 3. While such findings are not dispositive of the issue, the due regard by courts to the determinations of the agency charged with administering the provisions of the civil rights law suffices at least to establish material facts at issue.

That the court assumes for purposes of its analysis that the acts of the City were adverse actions does little to ameliorate the court's initial negative view of Hypolite's claims, particularly because no regard is shown to Hypolite's allegations of a continuing course of retaliatory conduct that culminated in his constructive discharge after the filing of this action. See

Hypolite's Second Declaration, Pl. Opp. to S.J., *supra*, Exh. 2.  A causal connection for purposes of showing unlawful retaliation may be established by showing that decision makers were aware of the protected conduct and that the protected activity was not wholly unrelated to the protected conduct, *Gupta v. Florida Board of Regents*, 212 F.3d 571, 590 (11th Cir. 2000).

Hypolite testified by declaration that he has been continuously subjected to racial discrimination and harassment by the City of Houston since 1998.  Even if the court were to focus solely on temporal proximity, Hypolite's claim of retaliation would not be subject to summary disposition.  Hypolite was constructively discharged less than one month after filing this suit.

The court dismissed Hypolite's declaration with respect to his assertion of constructive discharge by stating that a declaration of the legal standard for constructive discharge is not a fact.  No regard was given to Hypolite's declaration of having to acquiesce to racially derogatory comments, unfair evaluations, disciplinary actions and denial of promotion, Declaration, *supra*, at p. 1.  Hypolite's declaration specifically included acts which the City admitted are grounds for constructive discharge ("racially derogatory comments, unfair evaluations, disciplinary actions, denial of promotions (resulting in)...severe emotional distress.") Second Declaration, *supra*, at pp. 1 and 2.  The E.E.O.C. found reasonable to believe that Hypolite was retaliated against for participating in a protected activity, Pl. Opp. to S.J., Exh. 3.

Hypolite asserted all facts as supporting his retaliation claims, Pl. Second Amended Complaint, Docket No. 17, Section 4A (Special Statement of Facts–Hypolite).  The separation of facts with respect to retaliation and constructive discharge was unwarranted and erroneous.  Facts asserted by Hypolite in his complaint were supported by sworn declaration, and those facts were in no way controverted by any evidence of the Defendant City.

### B.  Garrett and Pratt

In its opinion, the court notes that Garrett and Pratt had a history of complaining of racial discrimination, which the court characterized as "vociferous, litigious history," Docket No. 49 at p. 3.  There can be no question that the City was aware of these plaintiffs' protected activity.  Establishing retaliatory motivation ordinarily must be established indirectly, and as shown above, at least one court has characterized the burden as establishing that adverse acts were not wholly unrelated to the protected activity.

The court concludes there was no retaliation because "the city says they were not interviewed at the job fair because they had no construction experience" and "Garrett and Pratt have no construction experience."

The City's assertion was based on an affidavit to which plaintiffs raised proper objections.  The affiant, Dolores Butler Rodgers, stated no qualification other than that she was employed by the City's Aviation Department, and she stated only conclusorily that she had personal knowledge, but provided no information as to the basis of such knowledge.  The affidavit is attached to Def. Mot. for S.J., Docket No. 42, not marked as an exhibit.   Plaintiffs' objections are in their response in opposition, Docket No. 43 at p. 7.

Plaintiffs presented ample evidence to raise a fact issue.  The requirements for the positions of assistant project manager and inspector, for which the plaintiffs were applying at the job fair, are found in Exh. 1 to the defendant's motion.  Contrary to the Rodgers affidavit, plaintiffs submitted evidence that their applications initially were well received and they were told that their qualifications were very satisfactory, Garrett's Second Declaration, Pl. Opp. to M.S.J., *supra*, Exh. 6, p. 1.  The E.E.O.C. specifically compared the plaintiff's qualifications, found the plaintiffs

qualified, and declared that it was likely the City retaliated against the plaintiffs in violation of Title VII.

With respect to Pratt, the E.E.O.C. found that the job description for the position held by Pratt at the time included "many of the same minimum qualification standards as the positions for which he applied," E.E.O.C. Determination, Pl. Opp. to M.S.J., *supra*, Exh.7, p. 2. The highest position to which plaintiffs applied, assistant project manager, had a requirement of bachelor's degree in civil engineering, which could be satisfied by professional experience in, *inter alia*, construction inspection. With respect to Garrett, the E.E.O.C. found that Garrett had not only a bachelor's degree in civil engineering, but also a master's and doctorate degree in environmental engineering, had successfully completed courses in, *inter alia*, construction management, reinforced concrete, and structural analysis, and the position he and Pratt held included responsibility for inspection of commercial buildings according to codes and technical specifications, *Id.*, Exh. 8, p. 2.

Garrett testified in his declaration, *Id.*, Exh. 6, that after being told that their qualifications were very satisfactory, their consideration changed after a human resources representative approached them and said he had identified them as individuals having complained of discrimination, p. 1, and thereafter they were told that their applications had been lost and that they would not be interviewed because the interviewers had left, p. 2. The E.E.O.C. found that individuals with lesser qualifications than the plaintiffs were granted interviews, *Id.*, Exh. 8, p. 2.

The City, in response to plaintiffs' opposition, recognized plaintiffs' objections to the Rogers' affidavit, Docket No. 47, third unnumbered page, but did not respond to the objections, curiously only asserting that the objections were not competent or probative evidence.

In light of the City's clearly specious argument with respect to the job fair, the court's reliance on the City's use of interview panels to fill other positions for which the plaintiffs applied is patently contrary to the applicable law. Whether or not the court is satisfied to fully credit the City's assertions while disregarding plaintiffs' declaration testimony of facing biased panels and individuals with lesser qualifications being selected, the court's sole reliance on the use of panels is contrary to applicable law. See *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 990-991 (1988)(Facially neutral practice, such as the use of selection panels, even if adopted without unlawful intent, may have effect indistinguishable from intentional discrimination.) *Watson* analysis applies to both disparate treatment and disparate impact claims. As the U.S. Supreme Court noted in the recent case of *Wal-Mart Stores, Inc. v. Duke,* ___ U.S. ___, 132 S.Ct. 2541, 2565 (2011), the employer in *Watson* gave supervisors unfettered discretion over promotions, no precise and formal criteria were utilized, and the decisions were based on subjective and unknown reasons, constituting an undisciplined system of subjective decision making that was an actionable employment practice.

The summary judgment evidence raises material issues of fact on the claims by Garrett and Pratt, regardless of whether those claims are considered potentially unlawful because of racial discrimination, retaliation, or both discrimination and retaliation.

### 3. First Amendment

The court rejected Garrett and Pratt's claims under the First Amendment solely on the issue of causation, finding that the City had advanced a legitimate, non-discriminatory reason for its actions. Such analysis stops short of the recognized Title VII paradigm, which provides the plaintiffs an opportunity to demonstrate that the actions were a pretext for unlawful motivation. As shown above, there was ample summary judgment evidence to raise a material issue of fact on

whether the reasons asserted by the City for its actions were true or whether they attempted to mask unlawful motives.

In the case cited by the court as precedent, *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004), the court found that a causal connection could be inferred by the fact finder between at least one plaintiff's protected speech, objections to allegedly biased promotion decisions by supervisors, and a subsequent adverse action.

For the reasons previously discussed, the court erred in granting summary judgment on the First Amendment claim.

**4. Civil Rights Acts, 42 U.S.C. §§ 1981 and 1985**

**A. 42 U.S.C. § 1981**

Claims of unlawful employment discrimination may be brought against a governmental entity under both Title VII and 42 U.S.C. § 1981, in the latter case through 42 U.S.C. § 1983. *Davis v. Dallas I.S.D.*, ___ F.3d ___ (5th Cir., No. 11-10090, decided Nov. 4, 2011), slip op. at p. 8. The claims are essentially the same and subject to the same analysis, *Id.*

Plaintiffs presented the Public Works and Engineering Affirmative Action Program Report, bearing on its face a reproduction of the City of Houston's seal and the department's logo, asserting that the issuance of the report preceded their being denied promotion as African-Americans in favor of a White applicant. The City in its response neither questioned the authenticity of the report nor disavowed its conclusions of a clear pattern of discrimination and its questioning the disparity between the percentage of African-American employees in the Department and in the general population of the municipality ("[apparent] discrimination of a preferential kind"), Pl. Opp. to M.S.J., *supra*, Exh. 9.

The court in its opinion holds that plaintiffs failed to show that the report played a role in the City's action because there was no showing that the interview panels, composed of supervisors in the Department, knew of the report or that the report was a factor in their decisions. Opinion, *supra*, at p. 5.

The court misplaced the burden of proof. The analysis is the same as under Title VII, as above shown, and the summary judgment proof is sufficient to raise a material issue of fact for the jury, since the departmental policy adds additional weight to the showing that the selection and promotion actions of the City were a pretext for unlawful motivation.

### B. 42 U.S.C. § 1985

With respect to 42 U.S.C. § 1985, sometimes referred to as the Ku Klux Klan Act, the court concluded that the plaintiffs neither had shown a constitutional violation nor submitted any evidence of a conspiracy.

The requirements of a claim under § 1985 do not include a specific showing of a constitutional violation, since the element of a deprivation of the equal enjoyment of rights secured by the law to all, *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), necessarily is encompassed by the Fifth and Fourteenth Amendments to the Constitution.

The summary judgment evidence of a human resources representative disqualifying plaintiffs from consideration because of their complaints of racial discrimination, as well as the panel members' rejecting the plaintiffs for promotion in favor of White individuals with lesser qualifications, certainly meet the requirement of demonstrating a racial animus, as well as the showing of conduct by more than one individual *Id.*

## **Summary and Prayer**

The court's conclusion that plaintiffs have "only their repetitive assertions–no fact, no corroboration" is clearly erroneous and in disregard of competent summary judgment presented by the plaintiffs, including the factual analyses of the United States Equal Employment Opportunity Commission. Under the applicable laws, material issues of fact are presented on all of plaintiffs' claims other than the preclusion of the single claim to which the plaintiffs conceded preclusion. The summary judgment and final judgment thereon must be vacated and the action restored to the jury docket so that this long-pending matter might be ultimately resolved.

Respectfully submitted,

_____
David T. López
Attorney-in-Charge for Plaintiff
S.D. of Texas No. 8467
State Bar of Texas No. 12563000
3900 Montrose Boulevard
Houston, TX 77006-4959
Telephone: 713.523.3900
Telecopier: 713.523.3908
E-mail: dtlopez@lopezlawfirm.com

OF COUNSEL:

DAVID T. LOPEZ & ASSOC.

## **CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing submission was served on this 22nd day of December, 2011, on the attorney-in-charge for the defendant by use of the court's Electronic Filing System.

_____
David T. López